ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona
CARIN C. DURYEE
Assistant U.S. Attorney
CARMEN F. CORBIN
Assistant U.S. Attorney
State Bar No. 025422
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
carin.duryee@usdoj.gov
carmen.corbin@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 14-02097-TUC-JAS |
| Plaintiff, | |
| vs. | TRIAL BRIEF |
| Carlos Cantizano, | |
| Defendant. | |

## I. CHARGES AGAINST THE DEFENDANT

The defendant was indicted on December 17, 2014, and charged with one count of distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2) and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). (ECF Doc.1.)

## II. STATEMENT OF FACTS

### A. Background on File-Sharing

"Peer-to-peer" (P2P) file sharing is a method of communication available to Internet users through the use of special software. Computers link together through the Internet using this software from a network that allows for the sharing of digital files between users

on the network. A user first obtains the P2P software, which can be downloaded from the Internet. In general, P2P software allows the user to set up file(s) on a computer to be shared with others running compatible P2P software. While there are several types of P2P software, most operate by keyword searches entered by the user seeking to download files, and provide users a method of downloading and sharing/distributing files using a distributed peer-to-peer file sharing system. The P2P programs that were used to download and distribute files in this case were Frostwire and ARES. These programs are typically free to download and used for the exchange of files between computer users.

The results of a keyword search are displayed to the user. The website does not contain the files being shared, but instead, provides the user with file names available for download from other users. The user then selects a file or files from the results, and his P2P software then directly contacts the computers with the actual files to download the files to the user who has selected it, into the folder which the user has designated, which is often a "shared" folder. Unless a user chooses not to share files, or moves files out of his shared folders, an individual distributes files to others searching for them with compatible P2P software by allowing that software to share files from any folders designated as "shared." Also, a user can control how many files he or she can share at one time.

**B. Investigation**

As part of this investigation, Homeland Security Investigation's (HSI) Special Agent (SA) Chuck Hollis, initiated use of software designed to specifically search the Gnutella P2P network for Internet Protocol (IP) addresses[1] sharing files depicting child pornography. The software compared hash values of files possessed by other P2P users

---

[1] The term Internet Protocol address or IP address refers to a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a subscriber's computer at varying intervals at the discretion of the ISP. IP addresses might also be static meaning an ISP assigns a user's computer a specific IP address which is used each time the computer accesses the Internet.

with hash values of known or suspected child pornography files previously identified by other law enforcement officers through their investigations. When a hash value match indicating suspected child pornography is found, the software notes the IP address of the computer possessing the files and attempts to download suspected child pornography files. The software accomplished this by establishing a direct connection with the computer using the suspect IP address. The law enforcement version of the software obtains "single source" downloads, meaning that it seeks to download a complete file from only one computer/ P2P user, as opposed to choosing pieces of files from different users, which typically takes place with ordinary P2P software as a means to speed up the downloading process.

Using such software, SA Hollis determined that a computer using IP address 70.162.244.25 was being used to share files that had been previously identified, via their hash values, to depict child pornography. Between July 17, 2012 and July 20, 2012, Hollis was able to directly connect to the subject IP address and "browse" the files shared by the subject IP address and to download portions of five different video files; each of the files was confirmed to depict sexual abuse of pre-pubescent children. Also captured by the UC investigation was the Globally Unique Identifier "GUID" associated with the P2P software sharing the child pornography; this is unique to the installation of the software on a particular computer. Earlier, this same GUID was seen having child pornography files available for download in California. Agents then learned via a summons that the subject IP address was assigned to Cox Communications, and obtained records from Cox Communications indicating that the subject IP address had been assigned to a residence at 1134 Shibell Drive in Sahuarita, Arizona, under the name of Alejandra Banda, at the times of the browses showing sharing of child pornography and the above file downloads.

Agents obtained a federal search warrant for that residence, and executed the warrant in Sahuarita, Arizona on August 3, 2012. Carlos Cantizano was present at the time. Although he did not reside at the house, Cantizano was visiting relatives at the home

and using their internet service. The homeowners, the defendant's nephew and his wife, later indicated that the defendant stayed with them for three or four weeks that summer.

At the time of the search warrant, Cantizano was in possession of an HP Pavilion laptop computer which his nephew indicated belonged to him, and which the defendant said was his and was used only by him.[2] An on-site forensic preview located the GUID associated with the downloaded files described above, which confirmed that the HP was the computer that had been sharing child pornography. The HP laptop and other computers and digital storage media identified as belonging to the defendant were seized from the home and forensically analyzed.  Found on Cantizano's computer were two different file-sharing programs, the GUID associated with the child pornography downloads in this case, search terms commonly used for child pornography, and over 235 files (mostly videos) depicting sexual abuse of pre-pubescent children, including toddlers and sadistic content/bondage.  These files had download dates spanning a 14-month period.  In addition, the forensic analysis revealed evidence that the defendant had been editing these files, in some cases creating videos within videos, making collages of child pornography, and adding and/or changing the audio associated with the videos.

The defendant was indicted on December 17, 2014, and an arrest warrant was issued for the defendant.  On January 28, 2015, he was arrested at his home in Rialto, California by agents from HSI.

**III.    ELEMENTS OF THE OFFENSES**

    **A.    Distribution of Child Pornography - 18 U.S.C. § 2252(a)(1) and (b)(1)**

Count one of the indictment charges the defendant with distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(1) and (b)(1).  To establish that offense, the government must prove the following elements beyond a reasonable doubt:

---

[2] As more fully discussed below, this and other incriminating statements made by the defendant were suppressed based on a failure to give Miranda warnings after stopping the defendant and family members just after they left the house while agents were preparing to serve the search warrant.  For that reason, the government will not be using the defendant's statements in its case in chief.

- 4 -

     (1) that the defendant knowingly distributed a visual depiction in interstate commerce by any means, including a computer;

     (2) that the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct;

     (3) that such visual depiction was of a minor engaged in sexually explicit conduct;

     (4) that the defendant knew that such visual depiction was of sexually explicit conduct; and

     (5) the defendant knew that at least one of the persons engaged in sexually explicit conduct in such visual depiction was a minor.

18 U.S.C. § 2252(a)(1); Model Jury Instructions for the Ninth Circuit § 8.184 (2014).

In *United States v. Budziak*, 697 F.3d 1105 (9th Cir. 2012) cert. denied, 133 S. Ct. 1621 (2013), the Ninth Circuit determined that evidence supported jury's finding that defendant distributed files containing child pornography by maintaining them in a shared folder accessible to other users of his software, despite his assertion that he disabled the sharing function on the software; he did not present evidence of that assertion to the jury, and the government presented evidence that file-sharing was enabled on defendant's software when they seized his computer, that there were multiple files containing child pornography in his shared folder, and that he initially told law enforcement agents that he had not changed the default settings on the software, and a reasonable jury could have found beyond a reasonable doubt that defendant's technical knowledge and familiarity with the software demonstrated that he knew he was sharing files. Evidence is sufficient to support a conviction for "distribution" of child pornography when it shows that the defendant maintained child pornography in a shared folder, knew that doing so would allow others to download it, and another person actually downloaded it. Here, the government will show evidence that the defendant altered the default settings of the file sharing program to change how many files could be downloaded from him. The defendant also changed the folder on his computer from which files were shared with other peer-to-peer users.

### 1. Definition of Child Pornography

The term "sexually explicit conduct" means actual or simulated sexual intercourse (including genital-genital, oral-genital, anal-genital, or oral-anal), bestiality, masturbation, sadistic or masochistic abuse, and the lascivious exhibition of the genitals or pubic area of any person. 18 U.S.C. § 2256(2). In this case, all of the videos and images charged depict obvious sexual acts with adults.

### 2. Interstate Nexus

Interstate nexus can be established in different ways. For example, proof that an image was created in one state but possessed in another is sufficient to establish that it has been shipped or transported in or affecting interstate commerce. *United States v. Lynn*, 636 F.3d 1127, 1135 (9th Cir. 2011). It is sufficient to show that the image "had previously moved in interstate commerce," even if it did so before being downloaded onto the defendant's computer. *Id.* at 1135-36. The government can also establish interstate nexus by showing that the image was downloaded or copied onto a computer disk or other data storage medium that was manufactured outside of the state. *See United States v. Guagliardo*, 278 F.3d 868, 871 (9th Cir. 2002) (images were produced using materials that had been shipped or transported in interstate or foreign commerce when they were copied onto computer disks that were manufactured abroad); *Lacy,* 119 F.3d at 750 (the government established the jurisdictional element where it offered "undisputed evidence" that the computer hard drive, monitor, and disks the defendant used to download the images had traveled in interstate commerce). This element of proof can be met by presenting evidence of markings such as "Made in China" on a hard drive and computer, as such markings are self-authenticating pursuant to Federal Rule of Evidence 902(7).

### B. Possession of Child Pornography - 18 U.S.C. § 2252A(a)(5)(B)

Count Two of the indictment charges defendant with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Section 2252A(a)(5)(B) makes it an offense to knowingly possess any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has

been mailed, shipped, or transported using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.  Thus, to sustain a conviction under § 2252A(a)(5)(B), the government must prove the following beyond a reasonable doubt:

    (1) that the defendant knowingly possessed a matter containing at least one visual depiction of a minor engaged in sexually explicit conduct;

    (2) the defendant knew the visual depiction contained in the matter was of a minor engaged in sexually explicit conduct;

    (3) that the defendant knew that production of such visual depiction involved use of a minor in sexually explicit conduct; and

    (4) that the visual depiction had either

        a) been mailed, shipped or transported in interstate or foreign commerce, or

        b) been produced using material that had been mailed, shipped or transported in interstate or foreign commerce, by computer or other means.

Model Jury Instructions for the Ninth Circuit, § 8.185 (2015) (modified for 18 U.S.C. § 2252A(a)(5)(B)).

To establish possession, the government must prove "a sufficient connection between the defendant and the contraband to support the inference that the defendant exercised dominion and control over [it]." *United States v. Romm,* 455 F.3d 990, 999 (9th Cir. 2006) (bracketed material in original; internal quotation marks and citations omitted). To establish knowledge, the government must prove that the defendant knew the material he possessed "contained an unlawful visual depiction." *Lacy,* 119 F.3d at 747.  At trial, the government will present evidence that the defendant searched for, downloaded, viewed and edited the child pornography files on his computer.

### C. Special Findings

Because the statutory maximum for possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) is increased to 20 years when the images depict pre-pubescent minors under the age of 12, the government has added a special finding to the verdict form which asks the jury for a finding that the material possessed depicts a pre-pubescent minor. Although all of the videos and images to be presented clearly depict pre-pubescent minors, the government also will present one witness at trial who will testify that he has met one of the child victims depicted in the child pornography found on the defendant's computer, and that she was under the age of 12 when she was molested and the video was created. Moreover, the jury is entitled to make the determination that the files depict actual children, and that they are pre-pubescent. *United States v. Salcido*, 506 F.3d 729 (9th Cir. 2007), *cert. denied*, 552 U.S. 1330 (2008) (No expert is needed to prove that the images depict an actual minor.) *United States v. McNealy*, 625 F.3d 858 (5th Cir. 2010)(Juries are still capable of distinguishing real and virtual images); *United States v. Deaton*, 328 F.3d 454 (8th Cir. 2003)(Jury can determine whether children in pornography are real); *United States v. Vig*, 167 F.3d 443 (8th Cir. 1999).

## IV.  EVIDENTIARY ISSUES

### A. The Defendant's Statements

On March 13, 2017, the defendant filed a motion to suppress statements (Doc. 68) based on an alleged Miranda violation, because the defendant's statements were made after his van was stopped just prior to the service of the search warrant; defendant's testimony at the April 20, 2017 motion hearing that he had been ordered out of the van at gunpoint and handcuffed before being transported back to the house (2 blocks away) was undisputed, as the government was unable to identify or locate the agent who performed the stop. However, both HSI agents who were present when the defendant was interviewed (and did not participate in the traffic stop) testified that he was not handcuffed when they saw or spoke to him, and was told he was not under arrest. In addition, the record established that

the defendant not only was comfortable not answering certain questions, but also that he was capable of telling the agents no, as when he refused to give them his password. The interview was brief, non-confrontational, and no weapons were displayed. The agents also both testified that they never threatened to arrest anybody, contrary to the defendant's testimony that they made some reference to taking his nephew in. Further, even though the magistrate judge found an illegal detention had taken place when agents stopped the van just after it left the home as they prepared to serve the warrant, the defendant testified during his cross examination that he had not felt that he was under arrest and that he thought the officer was just doing his job. (RT 4/20/17 at 124:10-7-11). The defendant's demeanor, along with his testimony, also established that he was not intimidated.

The defendant's motion did not allege a voluntariness issue, and there was no evidence that the defendant's will was overborne during the questioning. During oral argument post-testimony, defense correctly conceded that the strength of the motion was on the Miranda issue and that there was not a realistic argument that the defendant's statements were involuntary. (RT 4/20/17, at 172:10-173:13.)

As stated above, the government does not intend to introduce the defendant's statements in their case in chief. However, in the event that he chooses to testify, the government should be able to use his statements for purposes of impeachment.

**B. Other:  Child Pornography Presentation**

Given the disturbing and graphic nature of the evidence in this case, the government intends to play only very brief portions of the indicted videos and images in order to satisfy its burden of proving that the images depict children engaging in sexually explicit conduct. The case agent will remain nearby during deliberations in the event that the jury feels the need to review any of the explicit evidence again, but the government intends to provide minimal exposure to the material. However, given the potentially traumatic effects of this material on individuals, the government suggests being prepared to offer information (post-verdict) regarding counseling to any jurors and court personnel who desire it, as Chief

Judge Raner Collins did in recent child pornography trials by extending their service post-trial.[3]

## V.     CONCLUSION

This brief is offered to acquaint the Court with factual and legal issues which may arise at trial. The United States requests that the Court grant it leave to submit additional memoranda should other issues emerge later.

Respectfully submitted this 24th day of July, 2017.

                ELIZABETH A. STRANGE
                Acting United States Attorney
                District of Arizona

                s/*Carin C. Duryee*

                CARIN C. DURYEE
                Assistant U.S. Attorney

                s/*Carmen F. Corbin*

                CARMEN F. CORBIN
                Assistant U.S. Attorney

Copy of the foregoing served electronically or by other means this 24th day of July, 2017, to:

All ECF participants

---

[3] A judge can extend the jurors' period of service, rather than dismiss them, so that they can receive counseling during a specified period of time. To arrange this, the judge's deputy completes a form and counseling services are coordinated through Federal Occupational Health - U.S. Health and Human Services (FOH-HHS). Payment for the sessions is also coordinated between the court and FOH-HHS. As an example, the court in one district recently authorized six counseling sessions per juror for a period of three months following a difficult trial. The Administrative Office of the United States Courts' (AOUSC's) point of contact on these issues is Edward Juel, (202) 502-1434.